UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Water Services, Inc., | |
| Plaintiff, | Case No. 1-895 PJS/JJK |
| v. | **COMPLAINT** |
| ChemTreat, Inc. | **JURY TRIAL DEMANDED** |
| Defendant. | |

For its Complaint against ChemTreat, Inc. ("ChemTreat"), plaintiff U.S. Water Services, Inc. ("U.S. Water") states and alleges as follows:

1. This is an action misappropriation of trade secrets and tortious interference with contract under the statutory and common law of the state of Minnesota.

2. By this action, U.S. Water seeks to protect its business from the unethical and unlawful behavior of Defendant ChemTreat, which has misappropriated trade secrets developed, protected, and utilized by U.S. Water; and has on information and belief misled at least one of the customers U.S. Water in an effort to persuade that customer to violate its Confidential Non-Disclosure Agreement with U.S. Water and divulge U.S. Water's trade secrets and confidential information.

## THE PARTIES

3. U.S. Water is a Minnesota business corporation with its principal place of business in St. Michael, Minnesota.

SCANNED APR 1 2 2011 U.S. DISTRICT COURT MPLS

4. ChemTreat is a corporation organized under the laws of the state of Virginia with its principal place of business at 4461 Cox Road, Glen Allen, Virginia 23060. A competitor of U.S. Water, ChemTreat is in the business of providing water treatment programs.

## JURISDICTION AND VENUE

5. This is an action for misappropriation of trade secrets in violation of Minn. Stat. §325C.01 *et seq.* and tortious interference with contract in violation of the common law of Minnesota.

6. This Court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2).

## FACTUAL BACKGROUND

8. Since it came into existence in 1997, U.S. Water has been engaged in the business of selling water treatment and purification equipment, materials, and services. U.S. Water provides water treatment products and services, including laboratory services, pretreatment design and optimization, well water test kits, delivery services.

9. A significant proportion of U.S. Water's business is the sale and service of ethanol process technologies, equipment and training, and continuing education in that field.

10. A common problem for ethanol producers is the development of scale deposits on ethanol processing equipment. These deposits impede heat transfer and flow

2

and interfere with the proper operation of mechanical devices used in ethanol processing. Products and methods to reduce scale formation are of great value in the ethanol industry.

11. Through its employees, U.S. Water developed a method to reduce the formation of insoluble scale deposits during the production of ethanol. The method developed by U.S. Water converts phytic acid or phytates to inorganic phosphates to improve metal solubility and reduce deposits on and within ethanol processing equipment.

12. In October of 2007, U.S. Water filed Application No. 11/873,630 with the United States Patent & Trademark Office ("USPTO") seeking a patent to protect the system its employees have invented for the reduction of scale deposits. The patent has not yet issued, and prosecution before the USPTO continues.

13. U.S. Water adopted the brand pHytOUT™ when presenting the system to its customers and the trade. The pHytOUT™ system has taken more than four years for U.S. Water to develop and bring to market.

14. In addition to the technology disclosed and claimed in U.S. Application No. 11/873,630, the pHytOUT™ system is supported by confidential protocols, know-how, methodology, timing, techniques, and indicators of improved performance ("IIP") that are the proprietary trade secrets and confidential information of U.S. Water.

15. In 2009, U.S. Water began to market and run customer trials of the pHytOUT™ system, including both the invention disclosed in the United States patent application ("the pHytOUT™ invention) and the confidential protocols, know-how, methodology, timing, techniques, and IIP ("the pHytOUT™ Trade Secrets").

16. In order to demonstrate and run trials for an ethanol plant in Douglas County, Nebraska, operated by Green Plains Renewable Energy, Inc. ("GPRE"), on November 16, 2009, U.S. Water and GPRE entered into a Reciprocal Non-Disclosure and Confidentiality Agreement ("The GPRE NDA") that in part prohibited GPRE from making unauthorized use of, or disclosing, the pHytOUT™ Trade Secrets. A true and correct copy of The GPRE NDA is attached hereto and incorporated herein as Exhibit 1.

17. After execution of The GPRE NDA, U.S. Water began to demonstrate, teach, and implement the pHytOUT™ system at the ethanol facility in Douglas County, Nebraska.

18. Pursuant to The GPRE NDA, U.S. Water disclosed the pHytOUT™ Trade Secrets to GPRE as part of its demonstration and implementation of the system.

19. In order to demonstrate and run trials for an ethanol plant in Albion, MI operated by The Andersons, Inc., on July 2, 2010, U.S. Water and The Andersons entered into a Reciprocal Non-Disclosure and Confidentiality Agreement ("The Andersons NDA") that in part prohibited The Andersons from making unauthorized use of, or disclosing, the pHytOUT™ Trade Secrets. A true and correct copy of The Andersons NDA is attached hereto and incorporated herein as Exhibit 2.

20. After execution of The Andersons NDA, U.S. Water began to demonstrate, teach, and implement the pHytOUT™ system at the ethanol facility in Albion, MI.

21. Pursuant to The Andersons NDA, U.S. Water disclosed the pHytOUT™ Trade Secrets to The Andersons as part of its demonstration and implementation of the system.

22. U.S. Water relied on the promises made by GPRE and The Andersons in The GPRE NDA and The Andersons NDA, respectively, before disclosing to them its valuable pHytOUT™ Trade Secrets and confidential information.

23. U.S. Water communicated to GPRE and The Andersons the fact that the pHytOUT™ Trade Secrets were in fact trade secrets and were not to be used or disclosed except under the auspices of U.S. Water.

24. U.S. Water took other necessary and reasonable measures to protect the pHytOUT™ Trade Secrets from unauthorized publication and disclosure to unauthorized persons.

25. ChemTreat has sought to compete with U.S. Water at The Anderson plant in Albion, MI and at the GPRE plant in Douglas County, NE by offering to provide products and services to those plants.

26. ChemTreat is on information and belief aware that U.S. Water has entered into the GPRE NDA with GPRE and The Andersons NDA with The Andersons NDA.

27. In or about December of 2010, ChemTreat, on information and belief, persuaded The Andersons to disclose the pHytOUT™ Trade Secrets.

28. Since obtaining access to the pHytOUT™ Trade Secrets, ChemTreat has diverted from U.S. Water sales of chemicals for use in the pHytOUT™ system at The Andersons' Albion, MI ethanol plant.

29. ChemTreat would not have the ability or expertise to support the pHytOUT™ system at The Andersons' Albion, MI ethanol plant if ChemTreat did not have access to the pHytOUT™ Trade Secrets.

30. ChemTreat has also, on information and belief, relied on the pHytOUT™ Trade Secrets to attempt to divert from U.S. Water sales of chemicals to the GPRE ethanol facility in Douglas County, NE.

31. ChemTreat has, on information and belief, falsely represented to The Andersons, GPRE, and to the industry that the pHytOUT™ invention is in the public domain and that the pHytOUT™ Trade Secrets are not secret, confidential, or proprietary to U.S. Water.

32. By obtaining access to the pHytOUT™ Trade Secrets, ChemTreat on information and belief has in four months acquired know-how and expertise in the pHytOUT™ system that is similar to U.S. Water's and that could not have been acquired by proper means.

33. By misappropriating the pHytOUT™ Trade Secrets, ChemTreat has diverted business from U.S. Water, causing monetary damage.

## CAUSES OF ACTION

### Count I—Misappropriation of Trade Secrets

34. U.S. Water realleges and incorporates its above allegations by reference.

35. U.S. Water is the owner of the pHytOUT™ Trade Secrets.

36. The pHytOUT™ Trade Secrets have independent economic value and are not generally known to or readily ascertainable through proper means by individuals outside of U. S. Water.

37. U.S. Water has made reasonable efforts to maintain the secrecy of the pHytOUT™ Trade Secrets.

38. Upon information and belief, ChemTreat has obtained the pHytOUT™ Trade Secrets by "improper means" (as that term is defined in Minn. Stat. § 325C.01, Subd. 2) and has "misappropriated" (as that term is defined in Minn. Stat. § 325C.01, Subd. 3(i) or (ii)) the pHytOUT™ Trade Secrets.

39. ChemTreat on information and belief continues to use and disclose, or poses an imminent threat of using and disclosing, the pHytOUT™ Trade Secrets, all without U.S. Water's consent and authority.

40. Upon information and belief, ChemTreat has and continues to use and disclose, or poses an imminent threat of using and disclosing, the pHytOUT™ Trade Secrets, despite knowing or having reason to know that it has misappropriated them.

41. Pursuant to Minn. Stat. § 325C.02, U.S. Water is entitled to injunctive relief enjoining ChemTreat from disclosing or using any of the pHytOUT™ Trade Secrets and directing ChemTreat to return to U.S. Water any proprietary and confidential materials in ChemTreat's possession or control.

42. Pursuant to Minn. Stat. §§ 325C.03 and 325C.04, U.S. Water is also entitled to monetary damages as a consequence of ChemTreat's disclosure of Plaintiffs' Trade Secrets. Those damages, in an amount exceeding $75,000 to be determined at trial, include, but are not limited to, actual losses, royalties, exemplary damages, costs, and attorneys' fees.

### Count II—Tortious Interference with Contract

43. U.S. Water realleges and incorporates its above allegations by reference.

DOCS-#3438841-v1

44. U.S. Water entered into the GPRE NDA and The Anderson NDA, which contained valid and enforceable non-disclosure. ChemTreat was aware of U.S. Water's contracts with GPRE and The Andersons.

45. Without justification, ChemTreat intentionally interfered with U.S. Water's contracts with The Andersons and Green Plains, thereby damaging U.S. Water.

46. As a direct and proximate result of this tortious activity by ChemTreat, U.S. Water has been damaged in an amount to be determined at trial that is reasonably believed to exceed $75,000.

WHEREFORE, Plaintiff U.S. Water Services Corporation requests that the Court enter judgment in its favor and against ChemTreat, Inc. as follows:

1. Enjoining ChemTreat from disclosing or using any of the pHytOUT™ Trade Secrets;

2. Awarding U.S. Water monetary damages, including but not limited to actual losses, royalties, exemplary damages, costs, and attorneys' fees, in an amount in excess of $75,000 to be determined at trial;

3. Directing ChemTreat to reimburse U.S. Water for all of its attorneys' fees and costs related to this lawsuit; and

4. Awarding U.S. Water any other relief the Court deems just and equitable.

## JURY TRIAL DEMANDED

U.S. Water hereby demands trial by jury on all issues so triable.

DATED: _April 11 2011_      **LINDQUIST & VENNUM P.L.L.P.**

By _/s/_
Bruce H. Little (#17421X)
Christopher R. Sullivan (#0343717)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)

**ATTORNEYS FOR PLAINTIFF U.S. WATER SERVICES, INC.**