UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. WATER SERVICES, INC., | Case No. 11-CV-0895 (PJS/TNL) |
| Plaintiff, | |
| v. | |
| CHEMTREAT, INC., | |
| Defendant. | ORDER |
| CHEMTREAT, INC., | |
| Counterclaimant, | |
| v. | |
| U.S. WATER SERVICES, INC.; GLOBAL PROCESS TECHNOLOGIES, INC.; and ROY JOHNSON, | |
| Counterdefendants. | |

Bruce H. Little, Carrie Ryan Gallia, and Christopher R. Sullivan, LINDQUIST & VENNUM P.L.L.P., for plaintiff and counterdefendants.

David G. Mangum, Michael R. McCarthy, and Brandon J. Mark, PARSONS, BEHLE & LATIMER; Jan M. Conlin, Christopher K. Larus, and Heather M. McElroy, ROBINS, KAPLAN, MILLER & CIRESI L.L.P., for defendant and counterclaimant.

Plaintiff U.S. Water Services, Inc. ("U.S. Water") sells water-treatment and purification equipment, materials, and services. U.S. Water brought this action against defendant ChemTreat, Inc. ("ChemTreat"), alleging misappropriation of trade secrets and tortious interference with contract. The Court dismissed the claim of tortious interference with contract, ECF No. 38, and the parties later settled the trade-secret claim, ECF No. 148. Meanwhile, ChemTreat counterclaimed for a declaratory judgment of noninfringement and invalidity of U.S. Patent

No. 8,039,244 ("the '244 patent"). U.S. Water is the exclusive licensee of the '244 patent; additional counterclaim defendants Roy Johnson and Global Process Technologies, Inc. jointly own the patent.[1] (Johnson is also the chief innovation officer for U.S. Water. Johnson Decl. ¶ 1, Nov. 28, 2011 [ECF No. 85].)

This matter is before the Court on two motions: (1) U.S. Water's motion to dismiss ChemTreat's counterclaims for lack of jurisdiction and (2) ChemTreat's motion for summary judgment of noninfringement. Both motions are denied. U.S. Water's motion is denied for the reasons stated below. ChemTreat's motion is denied without prejudice because, although the Court believes that ChemTreat has a strong case for noninfringement, the Court also believes that U.S. Water should be allowed to take limited discovery before the Court makes a final decision. ECF No. 189. Because the Court described its reasons for this conclusion at the motions hearing, the Court will say no more about ChemTreat's motion in this order.

## I.  BACKGROUND

As noted, U.S. Water is a water-treatment company; its customer base includes the ethanol industry. U.S. Water developed a method — called "pHytOUT" — to reduce the formation of insoluble scale deposits on equipment used in the production of ethanol. The pHytOUT method involves adding the enzyme phytase during the production of ethanol. In March 2011, ChemTreat began marketing and selling a competing phytase-based product — called "PE1000" — to reduce the formation of scale deposits in ethanol-processing equipment. Wengert Dep. 17. A month later, U.S. Water filed this action, claiming (among other things) that

---

[1] Unless the context otherwise indicates, references to U.S. Water in this opinion are intended to include the other counterclaim defendants.

ChemTreat had misappropriated its trade secrets.  Specifically, U.S. Water claimed that the pHytOUT method "is supported by confidential protocols, know-how, methodology, timing, techniques, and indicators of improved performance" that are "proprietary trade secrets and confidential information of U.S. Water."  Second Am. Compl. ¶ 21.  U.S. Water accused ChemTreat of unlawfully obtaining these secrets from one or more of U.S. Water's customers.

U.S. Water filed this action in April 2011.  At that time, its application for a patent on the pHytOUT method was pending.  Its application was eventually approved, and the '244 patent issued on October 18, 2011.  The '244 patent contains three independent claims covering methods to reduce the formation of scale deposits on ethanol-processing equipment through the use of phytase.  McCarthy Decl., July 2, 2012 [ECF No. 155] Ex. 18.  On the day that the patent issued, ChemTreat filed a motion to amend its answer and add counterclaims of noninfringement and invalidity.  ECF No. 61.  U.S. Water resisted the motion, arguing that this Court did not have jurisdiction over ChemTreat's proposed counterclaims.  After litigating the issue of jurisdiction before Magistrate Judge Tony N. Leung — who found that ChemTreat's proposed counterclaims present a live controversy for Article III purposes, ECF No. 128 — the parties stipulated that ChemTreat could amend its answer to add the patent counterclaims, ECF No. 143, without prejudice to U.S. Water's right to move to dismiss those counterclaims.  The parties then filed the motions that are currently before the Court.  At about the same time, the parties settled the trade-secret claim, ECF No. 148, leaving the patent counterclaims as the sole remaining claims in this case.

## II.  ANALYSIS

U.S. Water moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, arguing that the Article III requirement of a case or controversy is not met because U.S. Water has not accused, and has not developed a basis to accuse, ChemTreat of infringement. In ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court is free to weigh the evidence and decide whether jurisdiction has been established.  *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).  Having weighed the evidence, the Court concludes that it has jurisdiction over ChemTreat's counterclaims.

A court does not have Article III jurisdiction over a declaratory-judgment action unless there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation and quotations omitted).  *MedImmune* overruled the Federal Circuit's prior case law that held that, when a plaintiff seeks a declaration of noninfringement or invalidity, the plaintiff has to establish jurisdiction by demonstrating conduct by the defendant patentee that caused the plaintiff to have a "reasonable apprehension" of being sued for infringement.  *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008).  Under *MedImmune*, a showing of a reasonable apprehension of suit is no longer *required*, but it remains one of a number of ways that a declaratory plaintiff can establish jurisdiction.  *Id.*  Purely subjective fear of being sued is not sufficient; there must be some affirmative act by the patentee that gives rise to an objectively reasonable apprehension of being sued for patent infringement.  *Id.* at 1338-39.

In prior cases, the Federal Circuit has found that a declaratory plaintiff had a reasonable apprehension of being sued for infringement when the patentee sued the declaratory plaintiff for misappropriation of trade secrets over the same technology to which the patent was directed. *See Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955-56 (Fed. Cir. 1987). These cases contain broad language, and ChemTreat relies on that language in arguing that a trade-secret lawsuit will *always* — in and of itself — create a reasonable apprehension of a patent lawsuit related to the same technology. For example, ChemTreat cites the italicized language in this passage from *Goodyear Tire*:

> The mere fact that the state court action did not specifically involve the '122 and '544 patents is immaterial in these circumstances. First, those patents did not issue until after the state trial judge had granted Goodyear's motion for summary judgment, and thus the patents could not have been at issue in that litigation. Second, though the patents had not issued when the state action was begun, that proceeding involves trade secret misappropriation of the same technology covered by the Releasomers' '122 and '544 patents. *Accordingly, the conduct of Releasomers, in itself, is sufficient to give Goodyear an objective inference of an impending infringement suit now that the patents have issued.*

*Goodyear Tire*, 824 F.2d at 955 (emphasis added; internal citations omitted).

ChemTreat's reading of *Goodyear Tire* and similar cases is certainly reasonable. Without a clearer mandate from the Federal Circuit, however, this Court is reluctant to hold that a party sued for misappropriation of trade secrets *always* has a reasonable apprehension of patent-infringement litigation related to the same technology. Such a holding would make it impossible for a patentee to protect its trade secrets without automatically subjecting itself to a declaratory-judgment action regarding its patent — a declaratory-judgment action that might prove ruinously

expensive to defend. It seems to the Court that as long as a patentee is careful (both inside and outside of court) not to do anything that can reasonably be understood as a threat to file a patent-infringement action, the patentee should be able to sue to protect its trade secrets without leaving itself vulnerable to having to defend a declaratory-judgment action.

In this case, U.S. Water has been anything but careful about its intentions, and thus the Court has no difficulty concluding that ChemTreat's apprehension of patent litigation is objectively reasonable. For example, in an April 2011 email to a U.S. Water customer that was considering purchasing from ChemTreat, defendant Johnson (U.S. Water's chief innovation officer) said the following:

> I need to speak with you later today about the ChemTreat "offering" and what has happened. They are on very thin ice & are putting people at risk. While our EPO patent application has been allowed, the USPTO patent prosecution remains painfully slow in an underfunded agency. The consequences gets [sic] too many attorneys involved.

Mark Decl., Nov. 17, 2011 [ECF No. 68] Ex. C. At around the same time, U.S. Water sent an email to a phytase supplier complaining that ChemTreat was "going around our patent application buying your (DSM) product in violation of our supply agreement . . . ." Mark Decl. Ex. D. The email also stated that "[w]e have filed a lawsuit against this competitor regarding misappropriation of trade secrets, and misrepresenting our product. We are filing additional actions against them today." Mark Decl. Ex. D. There is evidence that these sorts of statements from U.S. Water had the desired effect: After U.S. Water's email, the supplier agreed to stop selling phytase to ChemTreat and told ChemTreat that it was trying to avoid "possible infringements in their patented propositions to the market place." Mark Decl. Ex. E. In addition,

one of ChemTreat's customers testified that he stopped using ChemTreat's product because U.S. Water told him about its patent.[2]  Vondra Dep. 171-74.

U.S. Water has no satisfactory explanation for why it referred to its *patent* in discussions with these customers and suppliers.  At best, U.S. Water was being careless; at worst, it was intentionally trying to create confusion in the marketplace.  Notably, in both examples for which there is direct evidence, U.S. Water paired a specific reference to its patent with a specific reference to the possibility (or reality) of litigation.  Taken together, these references could reasonably be understood as a threat of patent litigation.

U.S. Water makes various arguments about why these were not real threats; for example, it points out that it could not sue the phytase supplier for infringement.  This argument misses the point, which is that U.S. Water was aggressively enforcing its intellectual-property rights within the industry, and that, as part of those aggressive efforts, it was alluding to its current or anticipated patent rights.  The fact that U.S. Water was willing to invoke its purported patent rights even before the patent issued and against parties who were not in a position to infringe (but who did business with those who *could* infringe or contribute to or induce infringement) only underscores U.S. Water's aggressiveness.  Combined with U.S. Water's swift action in filing a

---

[2]It is true, as U.S. Water points out, that the record does not reflect the context in which this customer was told about U.S. Water's patent.  It is also true that a ChemTreat employee testified that this customer stopped using PE1000 because the results were unsatisfactory.  As to the first point, in light of the direct evidence of U.S. Water's aggressive communications with other customers, it is a fair inference that U.S. Water's discussion with the ChemTreat customer about U.S. Water's patent similarly related to the customer's use of ChemTreat's product.  As to the second point, the Court believes that the customer's deposition testimony about the reason he stopped using PE1000 — testimony that came directly from the customer himself and that was given under oath, subject to cross-examination, and in a formal legal proceeding — is more reliable than whatever the customer may have told a ChemTreat employee at the time that the customer decided to stop using PE1000.

trade-secret action against ChemTreat only a month after ChemTreat began selling PE1000, the record contains ample evidence that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (citation and quotations omitted).

U.S. Water also points to the merits of its trade-secret claim, arguing that because it was a strong claim, it could not be considered a stalking horse for a patent claim. As an initial matter, the Court does not share U.S. Water's assessment of the strength of its trade-secret claim. The Court prepared for a hearing on ChemTreat's motion for summary judgment on that claim before being informed that the claim had been settled. The Court identified substantial problems with U.S. Water's trade-secret claim. More importantly, neither *Goodyear Tire* nor *Vanguard* qualifies its language about the relevance of trade-secret litigation based on the likelihood of the patentee winning that litigation. Instead, *Goodyear Tire* and *Vanguard* stress that the patentee's willingness and ability to file a trade-secret lawsuit regarding a particular type of technology is evidence of the patentee's willingness and ability to file a patent lawsuit regarding that same technology.

U.S. Water also makes much of the fact that, by definition, a trade secret cannot encompass information disclosed in a patent. That is true — but it was also true about the trade secrets and patents that were at issue in *Goodyear Tire* and *Vanguard*. Obviously, it did not matter to the Federal Circuit. Instead, what mattered to the Federal Circuit was the fact that the patent and the trade-secret claim involved the same general technology — just as they do in this case.

U.S. Water attempts to distinguish *Goodyear Tire* and *Vanguard* on the ground that the trade-secret claim in this case has been settled, while the trade-secret claim in those cases was ongoing.  That is also true, but also immaterial.  Nothing in either *Goodyear Tire* or *Vanguard* suggests that the Federal Circuit would have reached a different conclusion if the trade-secret claim had been resolved.  Indeed, the logic of the Federal Circuit is to the contrary.  In the Federal Circuit's view, the trade-secret claim was significant because it provided evidence of the patentee's willingness and ability to file a patent lawsuit; that remains true whether or not the trade-secret claim was settled.  The parties' settlement of U.S. Water's trade-secret claim — after a year of litigation involving extensive discovery and significant motion practice — does not change the fact that U.S. Water has "engaged in a course of conduct that shows a willingness to protect" its technology.  *Goodyear Tire*, 824 F.2d at 956.

U.S. Water also argues that, because ChemTreat cannot directly infringe the '244 patent (but only induce its customers to infringe), and because at present ChemTreat does not *have* any customers, U.S. Water has no basis to accuse ChemTreat of infringement.  But the Federal Circuit does not require that the declaratory plaintiff engage in infringing behavior before an actual controversy will arise.  Instead, the Federal Circuit requires *either* "present activity by the declaratory judgment plaintiff that could constitute infringement" *or* "meaningful preparation to conduct potentially infringing activity. " *Prasco, LLC*, 537 F.3d at 1336 (citation and quotations omitted).  Without question, ChemTreat has engaged in "meaningful preparation" to sell its potentially infringing product; indeed, it was actually marketing and selling PE1000 as of March 2011.

Notably, in its brief in opposition to ChemTreat's motion for leave to assert its counterclaims, U.S. Water stated that it might bring a patent action against ChemTreat if U.S. Water were to discover that an ethanol plant was using PE1000. ECF No. 84 at 7 n.2. In other words, U.S. Water has admitted that, as soon as ChemTreat is successful in finding a customer for PE1000, U.S. Water may sue ChemTreat. U.S. Water cannot have its cake and eat it too. It cannot, on the one hand, scare off ChemTreat customers by wafting allusions to patents and litigation into conversations about PE1000, and then, on the other hand, argue that ChemTreat cannot bring a declaratory-judgment action because ChemTreat does not have any customers.

Finally, U.S. Water argues that the Court should exercise its discretion not to hear ChemTreat's declaratory claims. There is no doubt that the Court has such discretion. *See MedImmune*, 549 U.S. at 136. In this case, however, the Court believes that ChemTreat's claims should be heard. The parties have already engaged in substantial litigation and developed much of the factual basis for ChemTreat's claims. More importantly, this is not a case in which ChemTreat went looking for a fight; instead, U.S. Water sued ChemTreat, and the record indicates that U.S. Water's aggressive assertion of its intellectual-property rights outside of the courthouse have harmed ChemTreat's ability to market its product. Under these circumstances, it would be inequitable to refuse to hear ChemTreat's claims. The Court therefore declines U.S. Water's suggestion that it abstain from exercising its jurisdiction.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion of U.S. Water Services, Inc., Global Process Technologies, Inc., and Roy Johnson to dismiss for lack of jurisdiction [ECF No. 150] is DENIED.

2. The motion of ChemTreat, Inc. for summary judgment of noninfringement [ECF No. 152] is DENIED WITHOUT PREJUDICE.

Dated:  November 26 , 2012                    s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge